Commonwealth *v.* Goodman, Appellant.

Submitted April 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Theodore S. Danforth,* Public Defender, for appellant.

*Henry J. Rutherford,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 28, 1972:

The petition for the allowance of appeal having been improvidently granted, the within appeal is dismissed.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent.

The record below establishes that appellant was eighteen years old at the time of his arrest on January 6, 1961. From the time of his arrest until January 20, 1961, petitioner was in continuous police custody. On January 20, petitioner was brought into court, and *without counsel*, signed a plea of guilty to the indictments for burglary and larceny. On February 1, 1961, petitioner's parents were able to obtain an attorney to represent their son, and the attorney conferred with petitioner on that date. On February 3, 1961, petitioner appeared in court with his attorney and was sentenced. The court records indicate that petitioner entered another guilty plea at this time. At the time of petitioner's arraignment and sentencing, it was not the custom of the Lancaster courts to make stenographic records of such proceedings, so none exists.

Petitioner's claim falls squarely within our decision in *Commonwealth ex rel. Mullins v. Maroney*, 428 Pa. 195, 236 A. 2d 781 (1968). There we held, in an opinion written by Mr. Justice EAGEN, that: "There can be no doubt that under the Sixth Amendment to the United States Constitution, which is applicable to criminal proceedings in the state courts, Mullins was entitled to the assistance of counsel, both *at the time of plea* and at the time he was sentenced, since each occasion was a 'critical stage' in the criminal prosecution proceedings. . . . The above constitutional requirements are retroactive and mandatory in all instances, regardless of the date and year the plea was entered or sentence imposed. Commonwealth ex rel. O'Lock v. Rundle, supra." Id. at 197-98, 236 A. 2d at 783-84 (emphasis added).

In *Mullins*, we also made it clear that unless "the record clearly shows that a defendant is informed of, or is cognizant of, his right to the assistance of counsel

at the time of plea or trial and expressly declines such assistance, . . . the burden is upon the Commonwealth to establish that the defendant was fully aware of his rights at the time the alleged waiver occurred." Id. at 199, 236 A. 2d at 784.

Here there is nothing in the record of the PCHA hearing to indicate that petitioner waived his right to counsel at his arraignment, let alone that he made an understanding and intelligent waiver. In fact, the Commonwealth does not even appear to contend that such a waiver occurred.

Despite this glaring constitutional defect in the proceedings below, the majority is willing to allow petitioner's conviction to stand. The majority apparently bases its affirmance on the assumption that petitioner's "re-plea" at the time of his sentencing was not in any way affected by the prior constitutionally defective plea. This assumption, totally unsupported by the record, makes a mockery of the constitutionally guaranteed rights to counsel and to trial by jury.

Certainly the average layman, and especially a youth of eighteen, cannot be expected to know that an uncounselled guilty plea cannot constitutionally be given any effect. In fact, most laymen would probably assume that once the "cat is out of the bag", it is out irrevocably.

Accordingly, once an accused has entered an uncounselled guilty plea, he must be clearly and affirmatively informed that his plea is of no legal effect, that it can be withdrawn, and that he has the right to stand trial if he so chooses. However, in the case at hand, there is *absolutely no evidence* that the accused was so informed. In fact, the only evidence in the record below is directly to the contrary. At the PCHA hearing below appellant testified that his counsel informed him that "there was nothing he could do for me, anyway he

said it was *too late since I had plead guilty* and signed a confession. . . ." (Emphasis added.)

The question here is not whether a constitutional right was violated, but whether a constitutional defect was corrected. To assume, as the majority apparently does, without any basis in the record whatsoever, that the constitutional defect present here was corrected, can only be characterized as a gross disregard of constitutional rights.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.